# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Marty Dale Johnson, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:14-4186-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on December 23, 2015, recommending that the Commissioner's decision be reversed and remanded to the agency because of a the Administrative Law Judge's ("ALJ") failure to weigh the various expert opinions in accord with the standards of the Treating Physician Rule. (Dkt. No. 20). The Commissioner filed a response indicating that she did not intend to file objections to the R & R. (Dkt. No. 22). The Court adopts the R & R of the Magistrate Judge, as further elaborated on below, as the order of the Court, reverses the decision of the Commissioner, and remands the matter to the agency for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). Known popularly as the "Treating Physician Rule," the regulation requires the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, since the Commissioner recognizes that the non-examining expert has "no treating or examining relationship" with the claimant, she pledges to consider their supporting explanations for their

opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." § 404.1527(c)(3).

Social Security rules and regulations recognize that chronic pain may not necessarily be provable by objective diagnostic studies and that the subjective complaints of a claimant should be given fair consideration in making a determination of disability. 20 C.F.R. § 404.1529; SSR 96-7P, 1996 WL 374186 (1996). The Administrative Law Judge, when evaluating a claimant's complaints of chronic pain, is directed to consider such factors as the claimant's daily activities, location, frequency and intensity of the claimant's pain symptoms, any precipitating or aggravating factors, the effectiveness of any pain medications, and treatment received. § 404.1529(c)(3)(i)-(vii).

## Factual Background

Plaintiff had a long history of chronic back pain that apparently derived from a childhood injury. Tr. 407. According to the medical record in this matter, Plaintiff's condition worsen in 2010, and he initially sought treatment from an internist, Dr. Gary Kuhns. Plaintiff was treated conservatively with pain medications by Dr. Kuhns, but the claimant's significant low back pain and radiating leg pain persisted. Tr. 248, 250, 251, 253, 254, 255, 256, 258, 260, 385-86, 387-88, 391-2. Plaintiff was then referred on December 21, 2011, to Dr. Robert Morgan Stuart, a neurosurgeon, for a more in depth work up. An MRI of Plaintiff's lumbar spine revealed, according to Dr. Stuart, "severe, multi-level degenerative disc disease with degenerative endplate changes . . . at every level in the lumbar spine . . . ." This was noted to be most severe at L5-S1, where "there is a complete loss of disc height with what appears to be bone on bone." Tr. 276-77, 408. Dr. Stuart described the MRI findings as "very pronounced and a dramatic degenerative

disc disease through every lumbar level." Tr. 408. Indeed, Dr. Stuart observed that "the chronicity of this pain syndrome as well as the extensive degeneration throughout the lumbar spine" presented "a difficulty in assessing surgical options." *Id.*

Rather than proceed immediately to surgery, Dr. Stuart elected to refer Plaintiff to his partner, Dr. James Keffer, a rehabilitation specialist, to see if the claimant might respond to epidural steroid injections. Tr. 408. Dr. Keffer, after conducting a physical examination and reviewing the medical record, diagnosed Plaintiff with chronic lower back pain with radiating leg pain. He found Plaintiff had limited range of motion in his lumbar spine and wondered whether the patient's reports of severe back pain might be the result of an inflammation of the nerve root at L5-S1 known as radiculitis. Tr. 410-12. Plaintiff thereafter underwent three epidural steroid injections administered by Dr. Keffer, which provided the claimant minimal relief. Tr. 314, 316, 318, 357-58.

Realizing little success from the epidurals, Plaintiff was referred back to Dr. Stuart for evaluation for surgery. Dr. Stuart noted in an office note of May 8, 2012, that Plaintiff continued to experience severe pain, "worse upon rising from a chair or getting out of bed, and exacerbated by prolonged standing." Tr. 348. A repeat MRI of the lumbar spine confirmed the "marked degeneration" at L5-S1 and L3-4. Tr. 320-21. "Given the failure of conservative therapy," Dr. Stuart decided to take Plaintiff to surgery to deal with the patient's "intractable back pain." Tr. 330-31, 332. Ultimately, Dr. Stuart performed a complex neurosurgical procedure on May 31, 2012, which included "an interbody fusion with a posterior pedicle screw and rod instrumentation" at the L5-S1 level. Tr. 328, 332-35.

Post-operatively Plaintiff realized some improvement in his ability to ambulate and initially had some improvement in his pain. Tr. 346-47, 444-45. However, within a few weeks of the surgery, Plaintiff was complaining again of severe pain, assessed as a 6 on a 10-point pain scale. Tr. 365. Dr. Stuart ordered a repeat MRI on August 11, 2012, with the clinical indication for the test being "left buttock and lower extremity pain with bilateral lower extremity numbness and weakness. History of spinal surgery in May 2012." Tr. 446. The MRI confirmed the presence of "moderately advanced disc degeneration in the mid lumbar spine," most notably at L3-4. Tr. 447.

Throughout the time of Plaintiff's treatment by Dr. Stuart and his group, Dr. Kuhns remained actively involved in the claimant's overall care and managed his continued use of narcotic pain medications. Tr. 368-69, 371-72, 374-75, 376-77, 378-79, 381-82. On September 24, 2012, Dr. Kuhns completed a seven-page questionnaire regarding Plaintiff's current status, impairments and function covering the period from February 2011 through September 2012.[1] Tr. 451-458. He described Plaintiff's persistent back and leg pain as "constant" and aggravated by movement or sitting in one position for a prolonged period. Tr. 453. Dr. Kuhns stated that Plaintiff's ability to sit, stand or walk was limited to no more than one hour at a time, and he could lift no more than 5 pounds and then only occasionally. *Id.* He further noted that Plaintiff's pain would constantly interfere with his attention and concentration, and he would likely be absent from work more than 3 times per month. Tr. 456. Dr. Kuhns further opined that

---

[1] During this period, Dr. Kuhns treated Plaintiff on 18 separate occasions. Tr. 248, 250, 251, 253, 254. 255, 365-66, 368-69, 371-72, 374-75, 376-77, 378-79, 381-82, 383-84, 385-86, 387-88, 389-90, 391-92.

-6-

Plaintiff's long-term prognosis was "poor." Tr. 451. There is little question that if Dr. Kuhns opinions were credited, Plaintiff would be deemed disabled under the Social Security Act.

Plaintiff testified at an administrative hearing before the ALJ on May 29, 2013, and provided information consistent with the findings of his treating physicians. He testified that he continued to experience severe lower back and radicular leg pain that "feels like an ice pick." Tr. 43. He testified that it hurt him to stand and he was unable to stand for longer than 35-40 minutes at a time. *Id.* He also testified that he could not sit for longer than 30 minutes at any time, and after a period of sitting or standing he would have to go and lie down for two hours. Plaintiff testified that he had gained some benefit from the surgery, particularly improving his ability to walk, but he was still significantly limited in his daily functions. He could not lift without pain anything heavier than a jug of milk, and family and friends assisted him with cooking and cleaning. Tr. 45-46, 48-49, 53-55. Plaintiff's sister, who is actively involved in his care and the management of his financial affairs, testified that the claimant remains, since his surgery, very limited in his ability to function. Tr. 56-58.

Plaintiff was evaluated on February 2, 2012, by a consulting medical examiner, Dr. Harriett Steinert, on behalf of the Social Security Administration. Dr. Steinert's findings were largely consistent with the findings of Plaintiff's treating physicians. She found Plaintiff had "multilevel degenerative disc disease" that caused back and radiating leg pain "all the time." Tr. 292. The condition produced significant limitations in Plaintiff's range of motion in his lumbar spine and produced positive straight leg raises bilaterally at 45 degrees. Tr. 290, 293. The degenerative disc disease, Dr. Steinert concluded, caused limitations on Plaintiff's activities for daily living and work activity. Tr. 293.

The record also contains two brief chart reviews by non-treating and non-examining physicians, both of whom issued essentially identical reports and conclusions. The first of these reports, issued by Dr. William Cain, on March 13, 2012, concluded that Plaintiff was capable of sitting, standing and walking 6 hours in an 8-hour day and lifting 20 pounds occasionally and 10 pounds frequently. Tr. 71. The bases of these conclusions are not provided in Dr. Cain's brief report. The report also contains a notable error, finding that Plaintiff's straight leg raises were negative bilaterally when Dr. Steinert's report clearly documented positive straight leg raises. Tr. 73, 290, 293. Another report by a chart reviewer, Dr. Cleve Hutson, was performed on July 23, 2012, and made identical findings to Dr. Cain regarding Plaintiff's ability to sit, stand, walk and lift and also provided no medical evidence to support these conclusions. Tr. 87. Dr. Hutson's report, which was something of a cut-and-paste job, also contains the identical error in Dr. Cain's report that Plaintiff had negative straight leg raises. Tr. 89. Dr. Cain's and Dr. Hutson's reports indicated that Plaintiff was capable of performing light work.

The ALJ issued an order in this matter on June 19, 2013, finding that Plaintiff's degenerative disc disease was a severe impairment under the regulations of the Social Security Act, but that Plaintiff nonetheless retained the residual functional capacity to perform light work. Therefore, the ALJ concluded Plaintiff was not disabled under the Social Security Act. Tr. 30, 32-35. The ALJ reached this conclusion after determining that he accorded "little weight" to the testimony of Plaintiff and his sister and the opinions of Plaintiff's long-serving, treating physician, Dr. Kuhns. Tr. 33, 35. Further, the ALJ minimized the findings of the consulting examiner, Dr. Steinert, contending that her other findings regarding gait and the claimant's performance on certain tests effectively negated Dr. Steinert's findings of decreased range of

motion in the lumbar spine and positive straight leg raises. Tr. 34. Finally, the ALJ gave "great weight" to the opinions of the "medical consultants," who he did not bother to identify by name and whose opinions he did not describe in any detail. Tr. 35.

## Discussion

The Treating Physician Rule establishes a preference for the opinions of treating physicians and requires all medical opinions be evaluated under the standards of the Rule. § 404.1527(c)(1)-(5). Under the facts of this case, the Treating Physician Rule should have provided a decided advantage to Plaintiff in the weighing of the competing opinions of the various medical experts. Dr. Kuhns had a long and involved treatment and examining history with Plaintiff, his opinions were consistent throughout the treatment, and his findings and conclusions found support in the treatment records of two treating specialist physicians, Dr. Keffer and Stuart, the multiple radiographic studies showing marked and diffuse degenerative disc disease in the lumbar spine, and the report of the consulting examiner, Dr. Steinert. On the other hand, the two chart reviewers, Drs. Cain and Hutson, had never examined or treated Plaintiff and provided thinly documented reports concluding that Plaintiff could lift, stand, walk and sit at levels unsupported by any other findings in the medical record.

The ALJ decision bears not the slightest indication that the opinions of the medical experts were weighed in accord with the Treating Physician Rule. Thus, the Magistrate Judge was entirely correct that the Commissioner's decision must be reversed and remanded with specific instructions that the competing opinions must be weighed in accord with the standards of the Treating Physician Rule. This means, for instance, when evaluating the differing opinions of the Dr. Kuhns and the chart reviewers about Plaintiff's ability to sit, stand and walk, deference

must be given to the physician who has treated and examined the patient, with particular weight given to a physician with a long and involved treatment history. Similarly, when weighing the competing opinions about how much Plaintiff can regularly and occasionally lift, deference must be given to the opinions of those most involved in Plaintiff's treatment, particularly when such opinions are consistent with Plaintiff's marked and diffuse lumbar disc disease.

The dismissal of the opinions of Dr. Kuhns on the vague statement that they are "inconsistent with the evidence of record" is hardly sufficient for meaningful Court review. Tr. 35. A careful review of the record, which this Court has set forth above to make the point, demonstrates strong support for Dr. Kuhns' opinions and the absence of substantial evidence to support the opinions of the chart reviewers. Further, the dismissal of the testimony of the claimant and his sister on the basis that such testimony is "not consistent with the medical record of evidence" is similarly inadequate and violates the commitment of the Commissioner, when evaluating a claimant's complaints of pain, to fairly consider his subjective complaints with the recognition that pain cannot always be objectively proven. 20 C.F.R. § 404.1529(a).

## Conclusion

Based upon the foregoing, the Court hereby **ADOPTS** the R & R of the Magistrate Judge, as further elaborated on herein, as the order of the Court, **REVERSES** the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), and **REMANDS** the case to the agency for further action consistent with this order. In light of the fact that Plaintiff's application for disability benefits has been pending for more than 4 years, the Commissioner is directed to conduct the administrative hearing on remand and to issue an administrative decision within 120 days of this

order.[2]

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
January 14, 2016

---

[2] The record is silent on the question of whether Plaintiff is presently receiving disability benefits. Since Plaintiff was found in the Commissioner's now reversed decision to be limited to light work and is presently over 55 years of age, he should have been deemed disabled at the time of his 55th birthday. 20 C.F.R. § 404.1568(d)(4). In the event Plaintiff is not now receiving disability benefits, the Commissioner is directed to immediately address this issue and award Plaintiff disability benefits if mandated by § 404.1568(d)(4). The award of disability benefits as of Plaintiff's 55th birthday does not affect his rights to an award of back benefits should he prevail on this pending application for benefits.

-11-